UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| MARTIN RAY TWIST, CHEROKEE ENERGY COMPANY, LLC, MARTIN TWIST ENERGY COMPANY, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | 4:05-cv-0187-JDT-WGH |
| JOSEPH ARBUSTO; DEAN CHARLES BAYER; JERRY and MERRILL HAAS, TRUSTEES OF THE JERRY AND MERRILL HASS TRUST; ROLAND B. LEONARD, TRUSTEE OF ROLAND B LEONARD REVOCABLE TRUST; JOHN R. and FRANCINE A. MANIS, TRUSTEES OF THE MANIS FAMILY TRUST U.D.T. Dtd. February 11, 1983; STEVE COLDWELL, SUCCESSOR TRUSTEE OF WILLIAM F. MARANO LIVING TRUST; DANIEL F. McMASTER; JEAN L. and URSULA H. REYNOLDS, TRUSTEES OF REYNOLDS FAMILY TRUST; RUTHANN RHODES; ALVIN B. RICHARDS, TRUSTEE OF THE R.F. REVOCABLE TRUST; BEVERLY CATHERINE ROMERO; ROY and RUTA SHELLEY; and GALE WHITAKER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ENTRY ON MOTION TO DISMISS OR IN THE ALTERNATIVE FOR AN ORDER TO TRANSFER TO SOUTHERN DISTRICT OF CALIFORNIA (Docket No. 14)[1]**

Plaintiffs Martin Ray Twist, Cherokee Energy Company, LLC and Martin Twist

Energy Company, LLC bring this action to compel arbitration against Defendants

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

Joseph Arbusto; Dean Charles Bayer; Jerry and Merrill Haas, Trustees of the Jerry and Merrill Haas Trust; Roland B. Leonard, Trustee of the Roland B. Leonard Revocable Trust; John R. and Francine A. Manis, Trustees of the Manis Family Trust U.D.T. Dtd. February 11, 1983; Steve Coldwell, Successor Trustee of William F. Marano Living Trust; Daniel F. McMaster; Jean L. and Ursula H. Reynolds, Trustees of Reynolds Family Trust; Ruthann Rhodes; Alvin B. Richards, Trustee of the R.F. Revocable Trust; Beverly Catherine Romero; Roy and Ruta Shelly; and Gale Whitaker.  The Plaintiffs' complaint seeks arbitration to resolve disputes surrounding alleged investments made by the Defendants in partnerships the Plaintiffs established for the exploration, development and operation of oil and natural gas wells.

On January 26, 2006, the Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(3) for improper venue, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted and under Rule 12(b)(2) for lack of personal jurisdiction.  In the alternative, the Defendants request that the court transfer the case to the Southern District of California pursuant to 28 U.S.C. §§ 1404 and 1406, contending that requiring arbitration in Indiana would be unlawful, none of the operative facts took place in Indiana and all of the witnesses and parties are located in California. The Plaintiffs responded to the motion on February 17, 2006, with a reply brief being filed on March 1, 2006 and a surreply filed on April 10, 2006.  The motion therefore is fully briefed and ripe for determination.

## I.   BACKGROUND

Plaintiff Martin Ray Twist is the managing member of Martin Twist Energy Company, LLC and Cherokee Energy Company, LLC (collectively, "Twist").  (Am. Compl. ¶ 1.)  Twist is engaged in the business of exploration, development and operation of oil and natural gas wells.  (*Id.* ¶ 3.)

The Defendants in this action all reside in California.  (*Id.* ¶¶ 4-16.)  Beginning in 1999, they, along with other investors, invested in certain partnerships with Twist that were intended to facilitate its oil and natural gas business.  (*Id.* ¶ 17.)  The Defendants entered into several different subscription agreements with Twist that memorialize the investment relationship (the "Subscription Agreements").  The Subscription Agreements are entitled "Burning Springs Energy Partners 1999/2000/2001-S L.L.P.," "Appalachian Energy Partners 2001/2003-S/D II, L.L.P.," "Perkins Well Completion 2004-D, L.L.P.," "Haynes #2 Energy Partners, L.L.P.," "Texas Energy Partners 2002/2002-II, L.L.P.," "Mueller #1 Energy Partners 2002/2004-II, L.L.P." and "Flaming Creek Energy Partners 2004-S, L.L.P."  Apparently each of these Subscription Agreements contains an arbitration provision that requires that all disputes between the parties be resolved through arbitration.  The place of the arbitration is always either Jeffersonville, Indiana, or Louisville, Kentucky.  The Subscription Agreements appear to have been later ratified in the form of Partnership Agreements.

The Defendants contend that Twist unlawfully solicited investments through "cold calls" to potential investors throughout the country.  (Mot. Dismiss 1.)  They assert that

3

Twist salespeople were not properly licensed with the Securities and Exchange Commission ("SEC") or the National Association of Securities Dealers.  (California First Am. Compl. ¶ 3.)  And according to the Defendants, the Twist salespeople greatly exaggerated, if not lied, about the potential return on investments, and the background of the company.  (*Id.* ¶ 2.)  This is despite the fact that Twist allegedly was subject to cease and desist orders in Alabama, Indiana, Pennsylvania and West Virginia (*id.* ¶ 3), and had not registered any of its offerings with the SEC (*id.* ¶ 2-3).

On August 1, 2005, the Defendants in this action filed a complaint in the Superior Court of California, County of San Diego, "seeking redress for plaintiffs' fraudulent solicitations and sales of unregistered, unqualified securities through material misrepresentations and omissions."  (Mot. Dismiss 1.)  In that action, they assert claims for violations of California securities laws, fraud, negligent misrepresentation, breach of fiduciary duty, aiding and abetting, violation of the California consumer laws, conspiracy, legal malpractice, accounting, conversion, declaratory relief and constructive trust.  The Plaintiffs in this action responded to service of the California complaint on November 23, 2005 by filing the instant action, in which they seek an order directing the Defendants to "cease and desist further prosecution" of the California case (Am. Compl. 24), compelling arbitration "in accordance with the contracts entered into between the parties" (*id.*) and awarding them reasonable attorneys' fees (*id.* 24-25).

**II.    DISCUSSION**

In their complaint, the Plaintiffs request that the court "order the appointment of arbitrators in conformity with the agreements to arbitrate, contained in the subscription agreements . . . ." (Compl. ¶ 55.)  They cite the Federal Arbitration Act ("FAA"), which provides that a "written provision in any . . . contract . . . to settle by arbitration" any future controversy arising out of such contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA was designed "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place [them] on the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (2000).  The FAA embodies a "liberal federal policy favoring arbitration agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The Defendants clearly do not believe that the court should compel arbitration in the Southern District of Indiana, or anywhere else.  This belief is made evident by the state court complaint they filed in San Diego County Court prior to this action being filed, as well as their motion to dismiss, in which they raise numerous deficiencies that purportedly require dismissal or transfer of this action.  These deficiencies include improper venue, failure to state a claim upon which relief can be granted and lack of personal jurisdiction.  The Defendants also request that the court transfer this case to the Southern District of California.

**A.      Venue as to Some Defendants is Improper.**

First, Defendants Coldwell, McMaster, Reynolds, Rhodes and Richards move to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(3) for improper venue.  When no party requests an evidentiary hearing on the facts relevant to venue, as is the case here, the court accepts the plaintiff's unchallenged allegations and evidence as true.  *See Moore v. AT&T Latin Am. Corp.*, 177 F. Supp. 2d 785, 788 (N.D. Ill. 2001).  However, in this case the Amended Complaint contains no specific allegations of venue being proper in the Southern District of Indiana, or facts tending to establish venue in this district as to any defendant, let alone Defendants Coldwell, McMaster, Reynolds, Rhodes and Richards.  But the Plaintiffs' response to the motion to dismiss does take up the venue issue as to some Defendants.

It appears that the issue of venue largely turns upon the court's interpretation of the forum selection clauses contained in the Agreements entered into by the parties, some of which are attached to the Plaintiffs' response to the motion to dismiss.  And it has been shown that the only agreements before the court that Defendants Reynolds, Rhodes and Richards entered into with the Plaintiffs set arbitration in Louisville, Kentucky, subject to Kentucky law.  Those agreements are the Burning Springs Energy Partners 1999/2000/2001-S LLP Subscription Agreements, and require that "any unresolved dispute or controversy arising under or in connection with this Agreement . . . be settled exclusively by arbitration, conducted in Louisville, Kentucky . . . ."  Therefore, any attempt to compel arbitration against those Defendants in this district must fail.  They will be dismissed from this action, and an appropriate judgment entered.

6

In contrast, it has been shown that Defendants Coldwell and McMaster did enter into Subscription Agreements placing arbitration in Indiana.  Therefore, they will remain in this action.

### B.  The Plaintiffs Have Stated a Claim Upon Which Relief Can be Granted.

The remaining Defendants also move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  A court may dismiss a claim under Rule 12(b)(6) only where it is clear that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (reversing dismissal); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (same).  In deciding such a motion, the court must accept as true all well-pleaded facts set forth in the complaint, construing the allegations liberally and drawing all inferences in a light most favorable to the plaintiff.  *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).  Under the liberal notice pleading standard in federal civil actions, a plaintiff need not allege facts or legal theories, but may describe the claim briefly and simply.  *Shah v. Inter-Cont'l Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) (reversing dismissal).

Primarily at issue in the Defendants' motion is whether the Plaintiffs have stated a claim for compelling arbitration in the Southern District of Indiana.  The Defendants contend that the Plaintiffs' claim for arbitration has no contractual basis because the Plaintiffs "failed to attached the alleged contracts to the complaint and even if the contracts were attached, the alleged contracts are illegal contracts and void."  (Mot.

7

Dismiss 10.)  The Defendants specifically suggest that the Plaintiffs did not attach the Subscription Agreements upon which they base their arbitration request to the complaint; and regardless, that the Subscription Agreements have been superseded, or, in the alternative, that the Subscription Agreements and their arbitration provisions are void because they violate federal and California securities law.  In response, the Plaintiffs contend that the Subscription Agreements apply, the Agreements are lawful, and therefore the arbitration provisions contained therein are enforceable under applicable Indiana law.

The following arbitration provision is representative of the provisions contained in most of the Subscription Agreements:

> 9.    Arbitration of Disputes.    Any unresolved dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by arbitration, conducted in Jeffersonville, Indiana, in accordance with the rules of the American Arbitration Association then in effect in Jeffersonville, Indiana, or such other place as the parties mutually agree.  The arbitrator shall be selected by the parties involved in the dispute or controversy, or if no agreement can be reached among such parties, then by the American Arbitration Association.  The arbitrator shall not have the authority to add to, detract from, or modify any provision of this Agreement nor to award punitive damages to any injured party.  The decision of the arbitrator shall be final, binding and unappealable and shall be rendered no later than 60 days from the date the arbitrator is appointed. Judgment may be entered on the arbitrator's award in any court having jurisdiction.  The direct expense of any arbitration proceeding shall be divided among the parties involved in the dispute or controversy.

8

(Resp. Mot. Dismiss Ex. 2, ¶ 9.)  As stated above, all of the Defendants except Reynolds, Rhodes and Richards signed Subscription Agreements containing such provisions that set the arbitration in Jeffersonville, Indiana, subject to Indiana law.

### 1.   The Plaintiffs Have Corrected their Failure to Attach the Subscription Agreements to the Complaint.

In support of their motion to dismiss, the Defendants first contend that this action must be dismissed because the "Plaintiffs failed to bear their burden of establishing that there is a valid contract with an arbitration agreement" (Mot. Dismiss 10) by not attaching the Subscription Agreements to their complaint.  However, since the filing of the motion, the Plaintiffs requested, and were granted, leave to file an amended complaint to which they attached each the Subscription Agreements upon which they base their claims.  Therefore, the court moves immediately to the substantive issue of whether those Subscription Agreements are applicable here, and if so, whether they are void as contrary to public policy.

### 2.   The Partnership Agreements Supersede the Subscription Agreements.

To answer that question, the court first must address whether the Subscription Agreements entered into by the parties upon which the Plaintiffs support their arbitration claims are still in force.  Particularly, the court must decide whether the Subscription Agreements have been superseded by the Partnership Agreements, as the Defendants contend.  Because some of the Subscription Agreements contain a provision that reads

"following acceptance of this subscription agreement, all disputes subject hereto shall be governed by the arbitration provisions of the Partnership Agreement" (Aff. of William Twist, Exs. A-M), the Defendants argue that the subsequent Partnership Agreements should be read to offer the final guidance on arbitration.[2]

This argument about whether the Subscription Agreements or Partnership Agreements govern raises a side, but fundamental, issue.  May the court evaluate the Partnership Agreements on the instant motion, and if so, how?  Typically, when ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must focus on the pleadings of the parties alone.  Fed. R. Civ. P. 12(b).  But in the instant motion, the Defendants' arguments rely heavily on the language of the Partnership Agreements.  They attach at least one Partnership Agreement, the Appalachian Energy Partners 2001-S II, L.L.P. Partnership Agreement, to their filings.  Moreover, the Plaintiffs thoroughly discuss the Partnership Agreements in the Third Affidavit of Martin Twist, in which Mr. Twist quotes the Appalachian Energy Partners 2001-D/2003-D/2003-S, L.L.P. Partnership Agreements.  In the affidavit, he sets out the purported arbitration language contained in the three Agreements, which requires that all disputes under the agreements be resolved by arbitration in Jeffersonville, Indiana.  Other parties also refer to, but do not quote, the Partnership Agreements in affidavits.  However, the Plaintiffs' Amended Complaint neither addresses or attaches the Partnership Agreements.  Therefore, under Federal Rule of Civil Procedure 12(b), the court may not

_____

[2]  While the Defendants contend that this language appears in each of the Subscription Agreements at issue, the Plaintiffs correctly respond that it actually appears in only four of the thirteen Subscription Agreements before the court.  (Exs. A, C, E and L.)

consider them in conjunction with the instant motion to dismiss filed under Rule 12(b)(6).

However, the court's examination of the Partnership Agreements is necessary to its determination of the dismissal and transfer issues, as the arbitration provisions in those Agreements, if any, likely will be dispositive here. Rule 12(b) facilitates one means by which the court may consider matters outside the pleadings such as the Partnership Agreements—by converting the motion to dismiss into a motion for summary judgment. As Rule 12 states, when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." As a result, the Partnership Agreements will not be excluded by the court, but rather considered with the motion to dismiss, which is hereby converted into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

The Defendants submitted at least one Partnership Agreement to the court. And the Plaintiffs followed suit by referring to several Partnership Agreements in the Twist affidavits. Both parties relied on these materials in support of their respective positions, and also urged the court to consider them in deciding the instant motion. Therefore, both parties have had constructive notice that the court may consider matters outside the pleadings in deciding the instant motion, and no additional notice of such is necessary. *Murdock & Sons Constr., Inc. v. Goheen Gen. Constr. Inc.,* 2003 U.S. Dist. LEXIS 22212, *3 (S.D. Ind. Sept. 15, 2003) ("[Constructive] notice, and the narrowness

11

of the issue presented on [the defendant's] motion [to dismiss], renders formal notice of conversion unnecessary"); *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) (notice given "may be actual or constructive"); Advisory Committee Notes to Rule 12(b)(6) (one reason for notice is so that parties are not taken by surprise).

Turning to the Partnership Agreements before the court, they plainly and unambiguously contain integration clauses that state that they "together with the Subscription Agreements, constitute[] the entire agreement between the parties hereto with respect to [their] subject matter and supersede[] any prior oral or written agreement with respect thereto."  (Ex. A to Mar. 2, 2006 Marisa Janine-Page Aff.)  And some of the Subscription Agreements contain superseding clauses referencing the Partnership Agreements.  Those clauses read: "following acceptance of this subscription agreement, all disputes subject hereto shall be governed by the arbitration provisions of the Partnership Agreement."  (Aff. of William Twist, Exs. A-M.)  The parties to, the subject matter of, and the consideration for both the Partnership and Subscription Agreements are identical.

Based on the language and content of the Agreements, the court concludes that the Partnership Agreements supersede the Subscription Agreements.  *See, e.g., Decca Records, Inc. v. Republic Recording Co.*, 235 F.2d 360, 363 (6th Cir. 1956) ("A second contract of a later date than an earlier contract containing the same subject matter, but containing terms inconsistent with the former contract, will supersede the former contract even though there is no express agreement that the new contract shall have that effect.").  Therefore, any arbitration provisions in the Partnership Agreements, if

12

different from those in the Subscription Agreements, will govern the court's analysis here.

### 3.   The Plaintiffs Properly Seek to Compel Arbitration in This Court.

Finally, the court arrives at the main substantive question at issue in the Defendants' motion—whether the Plaintiffs have demonstrated a basis for seeking to compel arbitration of the parties' disputes in this court.  The answer to that question is yes.  With the exception of the Agreements entered into by Defendants Reynolds, Rhodes and Richards, all of the Agreements before the court contain the requirement that the parties arbitrate any disputes between them in Jeffersonville, Indiana.  For example, the Appalachian Energy Partners 2001-S II, L.L.P. Partnership Agreement contains a specific arbitration clause that states that "any unresolved dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by arbitration . . . and will be conducted in Jeffersonville, Indiana, or such other place as the parties mutually agree."  (Ex. A to Mar. 2, 2006 Marisa Janine-Page Aff., p. 116.)  And the Subscription Agreements contain similar provisions, so even if they had not been superseded by the Partnership Agreements, the result would still be the same.  For example, the Appalachian Energy Partners 2001-D/2003-D/ 2003-S, LLP Subscription Agreements each require that "any claim, controversy or dispute between the parties . . . be resolved by arbitration conducted by a single arbitrator . . . .  All arbitration proceedings related to any Dispute shall occur in the city of Jeffersonville the State of Indiana."  And the Appalachian Energy Partners 2001-S II, LLP Subscription

Agreement requires that "any unresolved dispute or controversy arising under or in connection with this Agreement . . . be settled exclusively by arbitration, conducted in Jeffersonville, Indiana . . . ."  These arbitration provisions, which are applicable to all parties in this action except Defendants Reynolds, Rhodes and Richards, provide the basis for the Plaintiffs to assert their arbitration demands before this court, as they require that any disputes between the parties be arbitrated in Jeffersonville, Indiana.

### 4.    The Arbitration Provisions are Enforceable.

The Defendants generally contend that regardless of their content, the arbitration provisions are unenforceable as a matter of public policy because they are contained in agreements that are void as against public policy and promoting an illegal purpose. More specifically, the Defendants argue that because the Agreements memorialize transactions that were illegal under California and federal securities laws because the Plaintiffs did not file the correct forms with the SEC and the California Corporations Commissioner, those Agreements are void as a matter of law, and therefore cannot form the basis for compelling arbitration.

The Plaintiffs respond that the Subscription Agreements "are themselves legal, and memorialize a perfectly legal, albeit high risk, enterprise: investment in oil and gas wells."  (Br. Resp. Mot. Dismiss 9.)  And as for the Partnership Agreements, the Plaintiffs contend that they filed all the appropriate forms with the SEC, and the fact that some forms were not timely filed does not void the Agreements in their entirety, and

particularly the mandatory arbitration provisions.  Finally, the Plaintiffs contend that their fraud claims are independently subject to arbitration under the FAA.

At issue is whether the Partnership and Subscription Agreements are void, and if so, whether they still may be subject to arbitration.  The United States Supreme Court very recently offered guidance on whether a court may enforce an agreement to arbitrate contained within a contract challenged as unlawful.  In *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. ___, 126 S. Ct. 1204, 1207, 163 L. Ed. 2d 1038 (U.S. Feb. 21, 2006), several individuals challenged in Florida state court deferred-payment agreements they entered into with Buckeye Check Cashing, Inc.  The plaintiffs asserted that the agreements violated various Florida lending and consumer-protection laws.  The agreements apparently contained arbitration provisions that required that any disputes arising therefrom be resolved through arbitration.

The defendant moved to compel arbitration, and that request was denied at the trial court level.  However, the Florida Court of Appeals reversed the trial court's decision, finding that because the plaintiffs did not challenge the arbitration provision itself, but instead claimed that the entire contract was void, the agreement to arbitrate was enforceable, and the question of the contract's legality should go to the arbitrator. The Florida Supreme Court reversed, stating that enforcing an agreement to arbitrate in a contract challenged as unlawful "could breathe life into a contract that not only violates state law, but also is criminal in nature . . . ."  *Cardegna v. Buckeye Check Cashing, Inc.*, 894 So. 2d 860, 862 (2005).

The Supreme Court reversed the Florida Supreme Court's ruling, finding that regardless of whether it is brought in federal or state court, a challenge to the validity of a contract as a whole, and not specifically to an arbitration clause within it, must go to the arbitrator, not the court.  *Buckeye Check*, 126 S.Ct. at 1207.  Citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), which held that unless a party challenges an arbitration provision itself, the issue of a contract's validity should be considered by an arbitrator, the Court reasoned that the enforceability of arbitration provisions should not turn on questions of "public policy and contract law."  *Buckeye Check*, 126 S.Ct. at 1207.

Under this recent Supreme Court guidance and the more-established precedent of *Prima Paint*, because the parties here entered into agreements to arbitrate contained in the Partnership and Subscription Agreements, this court cannot take up the issues of whether those Agreements are lawful under federal, let alone California, law.  Instead, such questions must be addressed by an arbitrator.  Therefore, the Defendants' request that the court dismiss the Plaintiffs' claim to compel arbitration will be denied.

**C.    This Court May Exercise Personal Jurisdiction Over the Defendants.**

The Defendants present an argument similar to that under Federal Rule of Civil Procedure 12(b)(6) to support a contention that this court lacks personal jurisdiction over them pursuant to Rule 12(b)(2).  They contend that because there was "no valid contract or other evidence of any defendant consenting to the Indiana forum" (Br. Supp.

16

Mot. Dismiss 16), among other things, the court must dismiss the complaint for lack of personal jurisdiction.

The Plaintiffs respond that because the Partnership and Subscription Agreements entered into by the Defendants, with the exceptions of those entered into by Defendants Reynolds, Rhodes and Richards, contain provisions to arbitrate any disputes in Jeffersonville, Indiana, personal jurisdiction arises from those Agreements. They also contend that by entering into the Agreements within the Southern District of Indiana, the Defendants transacted business within this district such that personal jurisdiction exists over them in this case.

The court agrees.  Because it has been found that the Partnership and Subscription Agreements entered into by the Defendants are valid, it may also be said that the Defendants consented to this court's personal jurisdiction over them by entering into those Agreements, given the arbitration provisions contained therein.  *Kimco Leasing, Inc. v. Ransom Junior High Sch.*, 556 N.E.2d 1371 (Ind. Ct. App. 1990) (recognizing the ability of a party to a contract to consent to personal jurisdiction). Therefore, the court will decline to dismiss this case on personal jurisdiction grounds pursuant to Federal Rule of Civil Procedure 12(b)(2).

**D.     Transfer of Venue or Dismissal Would Not be Appropriate.**

Finally, the Defendants seek alternative relief pursuant to 28 U.S.C. §§ 1404 and 1406, contending that the arbitration provisions contained in the Partnership and Subscription Agreements cannot be enforced because they are unconscionable.  And

17

without a valid agreement to arbitrate in this forum, the Defendants suggest that this court either transfer the case to the Southern District of California pursuant to § 1404, or dismiss it pursuant to § 1406.  They contend that the Southern District of California would be the most convenient forum in which to litigate because most of the Defendants live and allegedly entered into the Agreements in California, and because most of the witnesses hail from its Southern District.

Under *Prima Paint,* the court may rule upon the Defendants' challenge to the arbitration provisions contained in the Partnership and Subscription Agreements.  It has examined those provisions, and finds that there are enforceable.  As to the conscionability of the provisions, the court finds that there is no indication in the record that there was a substantial inequity in the bargaining power of the parties, and even if there had been, "mere inequality in bargaining . . . is not a sufficient reason to hold that arbitration agreements are never enforceable . . . ."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991).  And the Seventh Circuit has made it clear that the courts should avoid interfering in arbitration agreements, stating that "arbitration is just a forum; people may choose freely which forum will resolve their dispute" *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 905-06 (7th Cir. 2004), which appears to have been done here.  The arbitration provisions were not buried or hidden in the Agreements, making it difficult or impossible for the Defendants to have agreed to their terms.  Rather, they appear in the same font as the other text of the Agreements, often under the heading of "Arbitration of Disputes."

18

The court understands that arbitration in Indiana may be inconvenient for the Defendants, many of whom are elderly and live out of state.  However, the Defendants have not presented sufficient evidence to demonstrate that they are financially incapable of participating in the arbitration.  This is especially true given that one stated requirement for investing in Twist's operations was having a net worth of over $1 million.  And some courts have even found that the forum non conveniens doctrine is inapplicable in the context of arbitrations covered under the FAA.  *See Al-Salamah Arabian Agencies Co. v. Reece*, 673 F. Supp. 748, 751 (M.D.N.C. 1987); *Spring Hope Rockwool v. Industrial Clean Air, Inc.*, 504 F. Supp. 1385, 1389 (E.D.N.C. 1981).

Moreover, while the Defendants discuss at great length other provisions in the Agreements that purportedly improperly waive the right to recover statutory and punitive damages under California law and evade the California Corporate Securities Law, when a federal court considers the validity of an arbitration provision, its consideration typically is governed by the FAA, rather than state law.  *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686 (1996); *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 492 (7th Cir. 2004) (ruling that no state, including California, could apply to arbitration any novel rule: "If a state treats arbitration differently, and imposes on form arbitration clauses more or different requirements from those imposed on other clauses, then its approach is preempted by § 2 of the Federal Arbitration Act.").  And even then, those are issues for the arbitrator, rather than this court, to take up.  *See, e.g., Boomer v. AT&T Corp.*, 309 F.3d 404, 418 n.18 (7th Cir. 2002).

Turning to the requests of the Defendants, 28 U.S.C. § 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." And 28 U.S.C. § 1406(a) states that "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Under these provisions, the court must determine whether the Plaintiffs' complaint "might have been brought" in the Southern District of California or if the case improperly "lays venue" in the Southern District of Indiana.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323 (7th Cir. 1995) answers that question. *Lauer* holds that where an "arbitration agreement contains a forum selection clause, only the district court in that forum can issue a § 4 order compelling arbitration" or "direct[] its scope." *Id.* at 327, 326. Indeed, the parties to an agreement to arbitrate in a state are presumed to have knowledge of the law governing federal arbitration in that state. *Id.* That law, primarily the FAA, provides for both enforcement of the agreement in the arbitral forum and resolution of issues concerning the making of the arbitration agreement. And implicit in an agreement to arbitrate is consent to enforcement of that agreement. Other courts similarly have recognized that transferring an action under § 1404, or dismissing it under § 1406, is usually against the interests of justice when a petition to compel arbitration is brought in the same forum in which the parties have agreed to arbitrate. *See, e.g., Aaacon Auto Transport, Inc. v.*

20

*Teafatiller*, 334 F. Supp. 1042, 1044 (S.D.N.Y. 1971) and *Lawn v. Franklin*, 328 F.
Supp. 791, 793-94 (S.D.N.Y. 1971).

Here, it appears that the Defendants agreed to arbitrate in the Southern District
of Indiana through valid and enforceable arbitration provisions contained in the
Partnership and Subscription Agreements.  Thus, they are deemed to have agreed that
Indiana is a convenient forum not only for arbitration, but also for enforcement of the
arbitration agreement.  Moreover, under *Lauer*, this district may be the only proper
forum in which the Plaintiffs' claims may be heard.  Therefore, transfer of this case to
the Southern District of California or its dismissal would not be appropriate, and the
court will decline to take such actions pursuant to 28 U.S.C. §§ 1404 and 1406.

## III.    CONCLUSION

For the reasons stated above, the court **DENIES** the Motion to Dismiss or in the
Alternative for an Order to Transfer to Southern District of California (Docket No. 14),
except with regard to Defendants Jean L. and Ursula H. Reynolds, Trustees of
Reynolds Family Trust; Ruthann Rhodes; and Alvin B. Richards, Trustee of the R.F.
Revocable Trust.  The Plaintiffs' Motion to Recognize Additional Authority (Docket No.
38) is **GRANTED**, and the Plaintiffs' Motion for Oral Argument (Docket No. 60) is
**DENIED**.

At this point in the proceedings, the parties may either agree to enter into arbitration as set forth in the Agreements, or the court will await the filing of a motion to compel arbitration by the Plaintiffs.

ALL OF WHICH IS ENTERED this 2nd day of June 2006.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Bryan J. Dillon
Fore Miller & Schwartz
bjdatty@aol.com

Marisa Janine-Page
Patricia A. Meyer & Associates
mjaninepage@aol.com