UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MARTIN RAY TWIST, CHEROKEE ENERGY COMPANY, LLC, MARTIN TWIST ENERGY COMPANY, LLC | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )      4:05-cv-0187-JDT-WGH |
| | ) |
| JOSEPH ARBUSTO; DEAN CHARLES BAYER; JERRY and MERRILL HAAS, TRUSTEES OF THE JERRY AND MERRILL HASS TRUST; ROLAND B. LEONARD, TRUSTEE OF ROLAND B. LEONARD REVOCABLE TRUST; JOHN R. and FRANCINE A. MANIS, TRUSTEES OF THE MANIS FAMILY TRUST U.D.T. Dtd. FEBRUARY 11, 1983; STEVE COLDWELL SUCCESSOR TRUSTEE OF WILLIAM F. MARANO LIVING TRUST; DANIEL F. MCMASTER; BEVERLY CATHERINE ROMERO; ROY and RUTA SHELLEY; and GALE WHITAKER; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**ENTRY ON MOTION TO INTERVENE BY LAWRENCE PEDLEY AND
PEDLEY, ZIELKE, GORDINIER & PENCE, PLLC (Doc. No. 73), AND ON
DEFENDANTS' MOTION TO STRIKE NEW ARGUMENTS IN THE  REPLY, OR IN
THE ALTERNATIVE, FOR LEAVE TO FILE A SUR-REPLY (Doc. No. 83)[1]**

An attorney, Lawrence Pedley, and the law firm of which he is a member, Pedley,

Zielke, Gordinier & Pence, PLLC (collectively the "Pedley Entities"), seek to intervene in

---

[1]  This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

an arbitration clause enforcement action.  The litigation began when an oil and gas developer-businessman and his business entities filed a complaint in this court on November 23, 2005, to require a group of California investors to arbitrate their claims of fraud, misrepresentation, securities violations, and other alleged wrongs.

On June 2, 2006, in an entry on various motions, the court held that, pursuant to the subscription agreements they signed, the California investors would have to proceed to arbitration, even on claims that the agreements were fraudulent.  The entry, however, did not dispose of the arbitration clause enforcement action.  The court did not rule on a request for attorney fees.  It also stated that it would await the filing of a renewed motion to compel arbitration if its entry did not prompt the parties to enter arbitration.

The Pedley Entities filed a Motion to Intervene as additional plaintiffs on August 22, 2006.  The motion was accompanied by a Memorandum of Law and a proposed Intervening Complaint Requesting Order Compelling Arbitration and for Attorney's Fees and Costs.  Only the California investors, the Defendants in the arbitration clause enforcement action, responded.  They filed an Opposition to Motion to Intervene on September 6, 2006, and the Pedley Entities filed a reply on September 22, 2006.  On October 3, 2006, the Defendants filed a motion to strike the Pedley Entities' reply.  The matter is fully briefed.  The court rules as follows.

2

## I.  BACKGROUND

A brief review of the parties and the circumstances from which the arbitration clause enforcement action as well as the motion to intervene arose may be helpful.

The Plaintiffs are Martin Ray Twist, a resident and citizen of Louisville, Kentucky, and two limited liability companies of which he is the managing partner, Martin Twist Energy Company, LLC, and Cherokee Energy Company, LLC.  (Am. Compl. ¶¶ 1-3.) Although one of the companies was organized under the laws of Kentucky and the other under the laws of Indiana, the principal place of business of each is Louisville.  (*Id.* ¶¶ 2-3.)  The Plaintiffs (collectively "Twist") describe their business as the exploration, development, and operation of oil and natural gas wells.  (*Id.* ¶¶ 1-3.)

The Defendants, all residents of California, are Joseph Arbusto; Dean Charles Bayer; Jerry and Merrill Haas, Trustees of the Jerry and Merrill Haas Trust; Roland B. Leonard, Trustee of the Roland B. Leonard Revocable Trust; John R. and Francine A. Manis, Trustees of the Manis Family Trust U.D.T. Dtd. February 11, 1983; Steve Coldwell, Successor Trustee of William F. Marano Living Trust; Daniel F. McMaster; Beverly Catherine Romero; Roy and Ruta Shelley; and Gale Whitaker.  (*Id.* ¶¶ 4-16.)

Since 1999, they and others invested in at least fourteen different Twist partnerships.  (Am. Compl. ¶¶ 18-47; Defs.' Mem. Supp. Mot. Dismiss 1.)  The subscription agreements for eleven of these partnerships contained clauses requiring

that all disputes between the parties be resolved through arbitration in Jeffersonville, Indiana.[2]  (Am. Compl. ¶¶ 19, 21, 23, 25, 27-28, 30, 32, 34, 36, 38, 40, 42, 44, 46.)

On August 1, 2005, the Defendants filed a complaint in the Superior Court of California, County of San Diego, alleging that Twist raised nearly $25,000,000 by selling fraudulent oil and gas investments to more than 250 investors.  (Pls.' Compl. Ex. 1 ¶ 1.) According to the Defendants, Twist employed unlicensed salespeople to cold-call investors and lure them with promises about Twist's experience in oil development and promises of "very low-risk, high-yield" securities with the potential to pay back the investment "every 30 to 60 days for a great number of decades."  (*Id.* ¶ 2.)  In reality, the Defendants charged, Twist, through Cherokee Energy Company, LLC, was operating "a classic [P]onzi scheme," in which money from new investors was used to pay off old investors, thus maintaining the appearance of a highly profitable business. (*Id.* ¶ 3.)  The Defendants asserted that these sales occurred even as Twist was subject to cease and desist orders in Alabama, Indiana, Pennsylvania, and West Virginia, and had filed false Regulation D notices with the Securities and Exchange Commission. (*Id.*)

Their California complaint alleges violations of California securities laws, fraud, conversion, legal malpractice, and other wrongs and included as defendants not only

_____

[2] Defendants who only agreed to arbitrate their disputes in Louisville, Kentucky, were dismissed from Twist's Amended Complaint.  (Order of Dismissal of June 2, 2006.)

4

the Plaintiffs in this case but also seventeen other named defendants and unnamed
"Doe" defendants.[3]  (*Id.* ¶¶ 18-48, 236-371.)[4]

Among them were the Pedley Entities.  The California complaint alleged that the
Pedley Entities served as general counsel to Twist and the allegedly fraudulent
partnerships, that Pedley drafted the private placement memorandums and partnership
agreements, and that Pedley participated in a testimonial videotape that was used to
lure potential investors.  (*Id.* ¶¶ 73, 132-37.)  According to the California complaint,
Pedley vouched for Martin Ray Twist by stating in this videotape,  "He (Martin) makes
himself money.  Generally he makes investors money.  I trust him.  If I didn't I wouldn't
represent him.  I don't represent clients I don't trust." (*Id.* ¶ 73.)

The Plaintiffs in this action responded to the California complaint by initiating the
arbitration clause enforcement litigation that is before the court.

## II.  DISCUSSION

---

[3]  For a detailed description of the alleged fraud, including the alleged
misrepresentations about wells that did not exist, the methods by which investors were wooed,
and the alleged use of investor proceeds to buy homes, real estate, luxury cars, helicopters,
and other possessions, see the Defendants' eighty-page amended complaint filed October 7,
2005, in *Arbusto v.Twist*, Case No. GIC 851627 (Cal. Sup. Ct .), attached as Exhibit 1 to
Plaintiffs' initial complaint in this proceeding.

[4]  All citations to a complaint or amended complaint refer to documents filed in this
proceeding unless noted otherwise.  Likewise, all references to "Plaintiffs" or "Defendants,"
when the first letter is capitalized, designate the Plaintiffs and Defendants in this case.

Key to the disposition of this motion is understanding what matters are before the court and what matters are not.

Twist filed a complaint to enforce an arbitration agreement with the Defendants and to seek attorney fees for having to go to court to obtain compliance.  Nothing more between these parties is being litigated here.  As the court's earlier entry made clear, issues relating to Defendants' claims of fraud, securities violations, and other wrongs, including the validity of the investment agreements, are reserved for the arbitrator.

The ability of a party to intervene, in the absence of a statutory right, depends on establishing some connection to the matters before the court.  If the Pedley Entities can show an interest related to Twist's right to an arbitrator and attorney fees – and can demonstrate that their motion is timely, their interest is subject to impairment, and they are not adequately represented by any of the parties – then they have a right to intervene under Federal Rule of Civil Procedure 24(a).  *See Heartwood, Inc. v. U.S. Forest Serv.*, 316 F.3d 694, 700 (7th Cir. 2003) (listing these four requirements for intervention of right).  Or if the Pedley Entities can point to a common question of law or fact, the court may permit them to intervene under Rule 24(b), so long as their application was timely, and inclusion in the case does not unduly delay the proceedings

or prejudice the rights of the original parties.[5]  *Id.* at 701 (citing the considerations involved in permissive intervention).

Intervention, of course, is only a means to an end.  What the Pedley Entities are really seeking is a court order requiring the Defendants to arbitrate their claims against them.  It is possible – the pleadings are unclear –  that the Pedley Entities want the court to order their inclusion in the arbitration between the Defendants and Twist.  This the court cannot do.

The Federal Arbitration Act, 9 U.S.C. §§ 1-16, limits the district court's authority over contracts containing arbitration agreements.  The court may stay proceedings over issues subject to arbitration.  *Id.* § 3.  It may issue an order compelling arbitration.  *Id.* § 4.  It may vacate or modify awards under certain circumstances.  *Id.* §§ 10-11.  The Act provides no authority by which a court could order or permit other parties to intervene in

---

[5]  Rule 24(a) and 24(b) both allow intervention when a statute confers, respectively, an unconditional right or a conditional right to intervene.  However, neither Pedley nor the firm assert a statutory right to intervene, and the court will not address this issue further.

When a party is requesting permissive intervention, and its claims do not qualify for supplemental jurisdiction because they do not arise out of the same transaction or occurrence, the court must also determine that it has subject matter jurisdiction.  *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995); *see also Conseco v. Wells Fargo Fin. Leasing, Inc.*, 204 F. Supp. 2d 1186, 1192-93 (S.D. Iowa 2002) (discussing why, following the Judicial Improvements Act of 1990, the requirement for independent jurisdiction remains for most permissive intervention requests).

The Federal Arbitration Act does not confer subject matter jurisdiction.  *Wisconsin v. Ho-Chunk Nation*, 463 F.3d 655, 659 (7th Cir. 2006).  Although the Pedley Entities have not addressed this issue, the Court finds that diversity jurisdiction exists under 28 U.S.C. § 1332 insofar as other court documents establish that the amount in controversy is likely to exceed $75,000 exclusive of interests and costs, and that all of the Defendants are citizens from California and the Pedley Entities, seeking to intervene as plaintiffs, are citizens of Kentucky as are the original plaintiffs.

an arbitration.  The Federal Rules of Civil Procedure do not provide district courts an alternate grant of authority over arbitration proceedings.  *See Lindland v. U.S. of Am. Wrestling Ass'n, Inc.*, 230 F.3d 1036, 1039 (7th Cir. 2000) (dismissing a suggestion that the federal rule for necessary joinder, Fed. R. Civ. P. 19, applies to arbitration proceedings and declaring that "the notion . . . that an arbitration must include all persons who could be affected by the outcome is novel and would work a revolution in arbitral proceedings"); *Champ v. Siegel Trading Co., Inc.*, 55 F.3d 269, 276-77 (7th Cir. 1995) (noting that absent an express provision in the arbitration agreement, Rule 81(a)(3) does not grant a district court authority to reform the agreement and order arbitration on a class basis pursuant to Rule 23).[6]

Presumably then, the Pedley Entities are seeking intervention to file an additional claim regarding their right to arbitration.  The law governing such claims is different than the law governing intervention.  Also, neither Pedley nor his firm signed the arbitration agreements between Twist and the Defendants.  The law differs as well as to the rights of signatory parties and non-signatories parties to arbitration under a contract or agreement containing such a provision.

---

[6] Rule 81(a)(3) provides that in proceedings under the Federal Arbitration Act, the rules of civil procedures apply only to the extent that matters of procedure are not provided for in the arbitration statutes.  However, as the Seventh Circuit explained, Rule 81(1)(3) only applies to judicial proceedings under the Act and is therefore limited to the specific district court functions defined by the Act.  *Champ*, 55 F.3d at 276 (citing *Government of United Kingdom v. Boeing Co.*, 998 F.2d 68, 73 (2d Cir. 1993)); *see also* 9 U.S.C. §§ 3-5, 9-11.  Rule 81(a)(3) then permits the court to allow another party to intervene in a motion to compel; but it does not grant the court authority to order that party's intervention in another party's arbitration proceeding.

The issue before the court is whether the Pedley Entities are entitled to intervene, and if so, whether such intervention is mandatory or left to the discretion of the court.

### A.  Intervention of Right

The Pedley Entities assert they have a right to intervene.  They argue that (1) the California litigation makes their motion timely, (2) they have an interest at stake because they are entitled to arbitration by the terms of the arbitration agreements or under a theory of equitable estoppel, (3) this interest will be impaired if they are forced to litigate in California or file a separate motion to compel in Indiana, and (4) Twist's representation does not adequately protect their interests.

The Pedley Entities' request to intervene fails for several reasons.  First, it does not appear to be timely – although the court cannot decide this issue conclusively.  In determining timeliness, a court considers the length of time that the proposed intervenor had knowledge that the suit could impact its interests, the prejudice that will result to the original parties if the request is granted and the prejudice to the proposed intervenor if denied, and any other unusual circumstances.  *Heartwood*, 316 F.3d at 701.  Here, the Pedley Entities knew they were being sued by the Defendants at least since November 23, 2005, when they acknowledged service of the California lawsuit.  (Decl. Marisa Janine-Page Opp'n Mot. Intervene Exs. D-E.)  This was also the same day that Twist filed its motion to compel enforcement.  Presumably at that time, or shortly thereafter, the Pedley Entities would have learned of this litigation, either through communication

9

with attorneys or by a notice or motion filed in the California lawsuit.  If so, the Pedley Entities waited nine months to file a motion to intervene, adding unnecessary delay to the resolution of their request as well as the California litigation.

The court cannot say with certainty that the motion to intervene was untimely because none of the parties have provided a date certain as to when the Pedley Entities knew or should have known of this litigation.  However, the motion was certainly filed too late to be of any significance to the matters before the court because, more than two months earlier, the court had determined that the Defendants would have to lay their grievances with Twist before an arbitrator.  The issue of Twist's rights to arbitration were effectively off the table, and it would not be in the Pedley Entities' interest to seek reconsideration of an entry that, to the extent it affected their rights at all, could not have been more favorable to them.

Secondly, the Pedley Entities' only asserted interest in this litigation, is not at stake in, or affected by, this litigation.  As nonsignatories to an agreement containing an arbitration clause, the Pedley Entities' right to arbitration presents entirely separate legal issues than those determining Twist's right to arbitration.  Nor will the Pedley Entities' interest in arbitration be subject to impairment by any action this court takes in this matter.  Even should an arbitrator overseeing the claims against Twist determine later that the partnership agreements are void for fraud, the Pedley Entities will not be bound by this determination or precluded from filing their own motion to compel arbitration. Non-mutual issue preclusion cannot be applied adversely against someone who was not a party, or in privity with a party, in the prior litigation.  *See Martin v. Wilks*, 490 U.S.

10

755, 762 (1989) (noting that a judgment "does not conclude the rights of strangers to those proceedings"), *superseded by statute on other grounds*.  The Pedley Entities have not alleged they were in privity with Twist.

The Pedley Entities' complaint for legal fees is also an insufficient basis for intervention as of right.  Although the court's earlier entry did not address Twist's similar claim for legal fees and expenses, its discussion of *Buckeye Check Cashing, Inc. v. Cardegna*, --- U.S. ---, 126 S. Ct. 1204 (2006), should have indicated to the parties that, just as a challenge to the validity of the partnership agreements as a whole must go to the arbitrator, so also must the resolution of this issue.  A district court's authority over contracts containing valid arbitration agreements is limited.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (noting that the Federal Arbitration Act "is at bottom a policy guaranteeing the enforcement of private contractual arrangements").  The court may determine if the specific agreement to arbitrate was valid.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).  It may decide if the parties agreed to arbitrate the dispute at issue.  *Mitsubishi Motors*, 473 U.S. at 626.  Most other issues, however, are reserved for the arbitrator.

Here, the arbitration agreements between Twist and the Defendants are written broadly.  Some cover "any unresolved dispute or controversy arising under or connection with" the subscription agreement.  (*See* Am. Compl. ¶¶ 25, 36, 38, 40, 42.) Others apply to "[a]ny claim, controversy or dispute between the parties."  (*Id.* ¶¶ 27, 28, 30, 32, 34, 44, 46.)  In either case, such language would indicate an intent to arbitrate issues arising from the partnership provisions that call for the payment of legal

expenses and fees.  What exactly these densely written provisions mean, if anything at all, may be uncertain.[7]  However, if parsing is needed, the job falls to the arbitrator to decide under the applicable principles and law governing the interpretation of contracts. It is also the arbitrator's responsibility, not the court's, to determine what fees, if any, the Defendants shall pay.

The Pedley Entities have no interest in the current litigation sufficient for intervention of right under Rule 24(a).  They may wish to avoid the expense and time of filing their own complaint to compel arbitration.  (*See* Pedley Entities Reply 13.) However, this motivation is present in nearly every request for intervention, whether granted or not.  It is not a sufficient ground for making intervention mandatory.

### B.  Permissive Intervention

The Pedley Entities also assert they have a right to intervention under Rule 24(b), under which a court may allow a party to intervene if there is a common issue of fact or law upon timely application.  As previously noted, their application does not appear to be timely.  However, as with intervention of right, there are additional reasons why the court should not exercise its discretion in granting their request.

---

[7]  The legal expense provisions, as recited in Twist's Amended Complaint, defy easy parsing.  A typical provision reads:

> In the event that any party hereto attempts to resolve a matter subject [sic] arbitration hereunder (excluding actions undertaken to enforce the arbitration provisions hereof or to enforce a determination of arbitrators made in accordance herewith), then such party shall pay the legal fees and expenses of any other party hereto in enforcing the arbitration provision hereof.

(Am. Compl. ¶ 56.)

First, it is unclear that a common issue of fact or law exists.  Admittedly, the proposed intervenors' proposed claim arises from the same arbitration clauses that formed the basis for the Twist complaint.  However, there are no apparent factual disagreements about this clause.  The issues are of law, and there is little in common ground here between Twist's claim to arbitration under the terms of the partnership agreements and the Pedley Entities' claim under a theory of equitable estoppel.

The Pedley Entities do assert that they also have express rights under the terms of the agreements.  (Pedley Entities Reply 9-10.)  However, they frame this claim so obliquely that it seems to be made solely for the purpose of satisfying Rule 24(b)'s commonality requirement.  Thus, they state:

> Therefore, accepting as true the allegations contained within the Intervening Complaint as this Court is required to do as a matter of law, the language of the arbitration provisions establish that the Pedley Entities are entitled to arbitration as "agents, employees, officers, directors and affiliated agents . . . ".
>
> Assuming arguendo, that this Court does not accept the Pedley Entities are covered by the express language of the arbitration provisions of the subscription agreements and/or partnership agreements, then regardless the Defendants are equitably estopped from denying arbitration to the Pedley Entities.

(*Id.* at 10 (emphasis, ellipsis, and punctuation in original).)

The Pedley Entities offer no explanation as to how this express language applies to them.  They do not state any facts that would allow this court to conclude they are agents, employees, officers, directors, or affiliated agents of Twist.  Moreover, the court notes that Pedley submitted an affidavit in the California litigation in which he denied any involvement by himself or the firm regarding certain aspects of Twist's dealings with the Defendants, including the drafting of offering materials and certain negotiations.

13

(*See* Decl. Janine-Page Opp'n Mot. Intervene Ex. A, 19-20 (Pedley Decl. ¶¶ 7,13,14 ).)[8]
Absent any factual basis for inferring express rights to arbitration, the Pedley Entities'
claim under this theory rings hollow.  It does not create an issue of law.

Even if the court were to find the arbitration agreements alone satisfied the
commonality requirement, the Pedley Entities' request to intervene under Rule 24(b)
would still fail.

Permissive intervention is appropriate only when it will not unduly delay or
prejudice the rights of the other parties.  Fed. R. Civ. P. 24(b); *Southmark Corp. v.
Cagan*, 950 F.2d 416, 419 (7th Cir. 1991).  The benefit of allowing another party to
become involved in the litigation should outweigh the impact of intervention on those
already involved.  *See Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381
(7th Cir. 1995).  Here, intervention's only assured benefit to the Pedley Entities is the
ability to make their arbitration claim in this action rather than in a separate complaint.
In contrast, intervention forces the Defendants to face certain additional litigation and
potential delays in their California case.

---

[8]  Paragraph fourteen reads:

Despite mine and Pedley, Zielke, Gordinier, Olt and Pence PLLC [sic] previous
relationship with Martin Twist and his various entities, no one at Pedley, Zielke,
Gordinier, Olt and Pence PLLC ever drafted any of the offering materials which were
sent to plaintiffs. Further, Pedley, Zielke, Gordinier, Olt and Pence PLLC has never been
General Counsel to defendants Twist, Twist LLC, Cherokee or any of the partnerships.
As soon as I became aware that the Pedley, Zielke, Gordinier, Olt and Pence PLLC
name was being used in the offering materials without mine or anyone at the firm's
permission, I immediately had the name removed. Thus, neither I nor Pedley, Zielke,
Gordinier, Olt and Pence PLLC ever expertized any of the offering materials.

(Decl. Janine-Page Opp'n Mot. Intervene Ex. A, 20 (Pedley Decl. ¶14 ).)

The court's finding that permissive intervention is not warranted is buttressed by its conclusion that the Pedley Entities claim to arbitration rights rests on shaky legal ground.  The would-be intervenors assert that the Defendants are equitably estopped from avoiding arbitration when its claims against the Pedley Entities raise "'allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'"  (Pedley Entities Reply 10 (quoting *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 882 (N.D. Ill. 2006).)

Equitable estoppel theories with respect to arbitration agreements come in two types.  First is the "benefits of the contract" type outlined in *Hughes Masonry Co. v. Greater Clark County School Building Corp.*, 659 F.2d 836 (7th Cir. 1981).  In that case, the Seventh Circuit held that a signatory to a contract containing an arbitration agreement could be required to arbitrate its claims against a nonsignatory when the claims arose from the contract.  *Id.* at 841.  "'In short, (plaintiff) cannot have it both ways.  (It) cannot rely on the contract when it works to its advantage and repudiate it when it works to (its) disadvantage.'"  *Id.* at 839 (quoting *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D. N.Y. 1966)).  In essence, if the plaintiff asserts that the nonsignatory is a party to the contract for the purpose of bringing its claims, it cannot protest when the nonsignatory seeks to invoke the contract's arbitration provision.[9]

---

[9] In *Zurich American Insurance Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687-88 (7th Cir. 2005), the Seventh Circuit discussed the reverse, but not necessarily equivalent, situation of when a signatory attempts to bind a non-signatory to a contract.  The court listed the five doctrines by which a non-signatory can be bound: (1) assumption, (2) agency, (3) estoppel, (4)
(continued...)

The Defendants, who are plaintiffs in the California litigation, are not estopped under this theory.  They are not seeking specific performance by the Pedley Entities or damages for a breach of a duty or obligation under the contract.  Rather, they are seeking to hold the Pedley Entities responsible for alleged misrepresentations that, they claim, induced them into signing fraudulent contracts.  The *Hughes* variety of equitable estoppel is inapplicable to these facts.

The Pedley Entities instead raise a theory of equitable estoppel formulated in *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999).  In *MS Dealer*, the Eleventh Circuit held that a plaintiff could be required to arbitrate when its claims against a defendant raised allegations of "substantially interdependent and concerted misconduct" by both a signatory and a nonsignatory to a contract.  *Id.* at 947 (quoting *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1433 (M.D. Ala. 1997)).[10]

To varying degrees, several circuits have adopted the Eleventh Circuit's "concerted misconduct" theory of estoppel.  *See Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005) (following *MS Dealer*'s "substantially interdependent and concerted misconduct" theory of estoppel)*; JLM Indus., Inc. v. Stolt-Nielsen SA*,

---

[9](...continued)
veil piercing, and (5) incorporation by reference.  *Id.* at 687.  The court noted additionally that its decisions have consistently required "a *direct* benefit under *the contract containing an arbitration clause* before a reluctant party can be forced into arbitration."  *Id.* at 688 (emphasis in original).

[10] See J. Douglas Uloth and J. Hamilton Rial, III, *Equitable Estoppel as a Basis for Compelling Nonsignatories to Arbitrate – A Bridge Too Far*, 21 Rev. Litig. 593 (2002), for a detailed analysis on how courts seized on language in prior cases to broaden their holdings and develop the theory of estoppel based on concerted misconduct or critically intertwined facts.

387 F.3d 163, 177 (2d Cir. 2004) (finding that a signatory may be compelled to arbitrate when the nonsignatory is seeking to resolve issues intertwined with an agreement requiring arbitration); *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (5th Cir. 2000) (adopting the Eleventh Circuit's "intertwined-claims test").  This court acknowledged the *MS Dealer* theory of estoppel in *Blimpie International, Inc. v. Butterworth*, No. 1:05-cv-0131, 2005 WL 756218, at *10  (S.D. Ind. Mar. 9, 2005).

Yet even the Eleventh Circuit has since qualified its concerted misconduct theory, declaring that "a plaintiff's allegations of collusive behavior . . . do not automatically compel a court to order arbitration of all of the plaintiff's claims against the nonsignatory defendant."  *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 975 (11th Cir. 2002), *rev'd on other grounds*, *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003).  Determining whether a claim is sufficiently intertwined to justify estoppel is a fact sensitive inquiry.  *Id.* at 976.  At a minimum, the nonsignatory defendant seeking to compel arbitration must show the plaintiff's dependence on the underlying contract in bringing its claims.  *Id.* (declaring this to be the "*sine qua non* of an appropriate situation for applying equitable estoppel").

The Seventh Circuit has not, to this court's knowledge, considered this critically intertwined claims theory of estoppel.  However, there are several reasons for believing that it would hesitate to broaden estoppel beyond its holding in *Hughes* based on the facts in this case.

First the Supreme Court has held repeatedly that arbitration "is a matter of consent, not coercion." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).  In this respect, the test for determining whether a party is estopped is not the relationship of the claims but whether a contract was formed under state law.  In Indiana, as in most states, this means the primary consideration is the parties' outward manifestation of intent.  *See, e.g.*, *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005).  If intent can be inferred from the nature of the contract, then the party may be estopped.[11]  In *Hughes*, the plaintiff's claim were so heavily dependent on the contract that the plaintiff could be said to have intended to arbitrate its claims against the nonsignatory.  Likewise, in *Blimpie*, the nonsignatory defendant was so closely related to a signatory that the plaintiff could be said to have intended to arbitrate claims against the nonsignatory.  Here, the Defendants' allegations in the California litigation do not depend on the partnership agreements, and the Pedley Entities could not be described as Twist's employee, agent, intended beneficiary, or alter ego.

Lastly, and perhaps most importantly, the Seventh Circuit's primary concern in *Hughes* was to prevent the plaintiff from relying on the contract when it suited its purposes and disavowing the contract when it did not.  Here, however, if any party is

---

[11]  Fifth Circuit Judge James L. Dennis has suggested that the cases in which a signatory can be compelled to arbitrate with a nonsignatory would be better characterized as agreements implied in fact rather than as applications of equitable or promissory estoppel. *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 533 (5th Cir. 2000) (Dennis, J., dissenting).

attempting to have it both ways, it is the Pedley Entities.  They are trying to obtain arbitration despite their representations in the California pleadings that they were not involved in Twist's dealings and that Twist's use of Pedley's testimonial was unauthorized.  They are claiming that they were not parties to the agreements but nonetheless entitled to a benefit it conferred.  Permissive intervention should not be a vehicle for such manipulation.

### C.  Motion to Strike Reply

As the forgoing discussion makes apparent, the court has weighed the Pedley Entities' Reply in fashioning this entry.  The court considered the Defendants' motion to strike the reply and agreed with the Pedley Entities that the pleading did not raise any substantially new issues.  The court also determined that little purpose would be gained by further pleadings.

19

### III.  CONCLUSION

For the reasons stated above, the court **DENIES** the Pedley Entities' Motion to Intervene  (Doc. No. 73).  The court also **DENIES** the Defendants' Motion to Strike New Arguments in the Pedley Entities' Reply or, in the Alternative, For Leave to File Sur-Reply (Doc. No. 83).[12]

ALL OF WHICH IS ENTERED this 3rd day of January 2007.

_____

John Daniel Tinder, Judge
United States District Court


Copies to:

Magistrate Judge William G. Hussmann, Jr.

Bryan J. Dillon
FORE MILLER & SCHWARTZ
bjdatty@aol.com

Marisa Janine-Page
PATRICIA A. MEYER & ASSOCIATES
mjaninepage@aol.com

William Henry Mooney
LYNCH COX GILMAN & MAHAN PSC
wmooney@lcgandm.com

---

[12] As discussed earlier in this entry, issues regarding whether Twist is entitled to legal fees and expenses are reserved for the arbitrator.

20