UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY  DIVISION

|  |  |  |
|---|---|---|
| MARTIN RAY TWIST, CHEROKEE ENERGY COMPANY, LLC, and MARTIN TWIST ENERGY COMPANY, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | 4:05-cv-187-SEB-WGH |
| vs. | ) ) ) | |
| JOSEPH ARBUSTO, DEAN CHARLES BAYER, JERRY and MERRILL HAAS, Trustees of the Jerry and Merrill Hass Trust, ROLAND B. LEONARD, Trustee of Roland B. Leonard Revocable Trust, JOHN R. and FRANCINE A. MANIS, Trustees of the Manis Family Trust U.D.T. Dtd. February 11, 1983, STEVE COLDWELL, Successor Trustee of William F. Marano Living Trust, DANIEL F. MCMASTER, BEVERLY CATHERINE ROMERO, ROY and RUTA SHELLEY, and GALE WHITAKER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY GRANTING DEFENDANTS' MOTION TO CONFIRM ARBITRATION AWARD AND DENYING PLAINTIFFS' MOTION TO VACATE ARBITRATION AWARD**

The Parties have placed before us opposing motions.  On November 20, 2007,

Defendants, Joseph Arbusto; Dean Charles Bayer; Jerry and Merrill Haas, Trustees of the

Jerry and Merrill Haas Trust; Roland B. Leonard, Trustee of Roland B. Leonard

Revocable Trust; John R. and Francine A. Manis, Trustees of the Manis Family Trust

U.D.T. Dtd. February 11, 1983; Steve Coldwell, Successor Trustee of William F. Marano

Living Trust; Daniel F. McMaster; Beverly Catherine Romero; Roy and Ruta Shelley; and Gale Whitaker (the "Arbusto Investers"), moved to confirm the Arbitration Award [Docket No. 106]. Plaintiffs, Martin Ray Twist, Twist Energy Company, LLC, and Cherokee Energy Company, LLC (collectively, the "Twist Entities") object to Defendants' Motion, and thus, on November 28, 2007, moved to vacate the Arbitration Award [Docket No. 110]. For the reasons detailed in this entry, we GRANT Defendants' Motion to Confirm Arbitration Award and DENY Plaintiffs' Motion to Vacate Arbitration Award.

**Factual Background**

Plaintiffs, the Twist Entities, and Defendants, the Arbusto Investors, entered into various subscription agreements to purchase oil and gas limited partnership securities that contained provisions for final and binding arbitration of disputes. In a prior entry in this matter [Docket No. 70], made of record on June 2, 2006, the Court[1] found that the subscription agreements were superceded by partnership agreements, but that the partnership agreements also contained provisions for final and binding arbitration of disputes.

On October 1, 2006, a joint demand for arbitration was filed with the American

---

[1] At the time, Judge Tinder was the presiding judge in this action. However, the case was reassigned to Judge Barker on December 28, 2007, following Judge Tinder's elevation to the Court of Appeals.

Arbitration Association ("AAA")[2] and thereafter the parties jointly participated in the selection of an arbitrator.  The arbitration hearing was originally scheduled to occur on July 23, 2007, but on April 27, 2007, the Twist Entities moved for a continuance of ninety days, due to the fact that Martin Twist, the managing member of Martin Twist Energy Company, LLC ("Twist Energy") and of Cherokee Energy Company, LLC ("Cherokee"), was scheduled to undergo total hip replacement surgery on July 20, 2007.  Rather than continuing the hearing for ninety days as the Twist Entities had requested, the Arbitrator instead decided to advance the hearing date by one week to July 16, 2007, in order to complete the arbitration before the surgery and also accommodate the trial schedule of Marisa Janine-Page, counsel for the Arbusto Investors.  However, on May 26, 2007, the Twist Entities' attorney, Bryan Dillon, suffered a heart attack and consequently, on May 29, 2007, Mr. Dillon again requested a continuance of the arbitration hearing.  The Arbitrator granted the request and the hearing was rescheduled for September 17, 2007.[3]

Then, on July 6, 2007, the Twist Entities filed a third request for a continuance of the arbitration hearing, based upon the fact that Mr. Twist's surgery had been rescheduled for September 10, 2007, seven days before the rescheduled hearing was to commence.

---

[2] The facts surrounding the dispute that led to the arbitration are not pertinent to the determination of the motions at bar; thus, we do not include them here.  Please refer to the Court's prior entries in this matter for further discussion of those facts.

[3] Although the Twist Entities did not suggest a specific date for the arbitration hearing to be rescheduled, they requested that it be reset sometime in November or December.  Thus, although the Arbitrator granted the continuance, he did not provide them with as much time as requested.

According to Mr. Twist's physician, Ernest Eggers, M.D., Mr. Twist's surgery entailed more risk than the normal total hip replacement surgery, "due to the fact that Mr. Twist is overweight, suffers from diabetes, and has heart and lung issues." Eggers Second Aff. ¶ 3. Thus, Dr. Eggers concluded that the proximity between the previous surgery date (July 20, 2007) and the originally rescheduled hearing date of July 16, 2007, raised concern because "the stress of a court proceeding for four days immediately preceding a surgery of this nature and risk would have been very detrimental to Mr. Twist's health and would negatively affect the possibility of a successful outcome." Id. ¶ 4. Another of Mr. Twist's doctors, Paul Loheide, M.D., concurred regarding the need to reschedule the surgery because he was working with Mr. Twist "to bring his diabetes under control and to assist him in losing weight. Even a weight loss of 10-15 lbs. [p]rior to surgery will significantly increase the chance for a successful outcome." Loheide Aff. ¶ 5.

After hearing both parties' arguments, the Arbitrator denied the Twist Entities' third request for a continuance, but reminded Mr. Twist that he could appear by video or teleconference if he was unable to appear in person. The arbitration hearing took place from September 17, 2007, to September 20, 2007, as scheduled. Mr. Twist underwent surgery on September 10, 2007, and was released from the hospital the day before the hearing. He was physically unable to attend the hearing and did not appear via video or teleconference. However, Mr. Dillon, the Twist Entities' attorney, and Andrew Tomljenovich a/k/a Drew Thomas, Vice President for Twist Energy and Cherokee, attended the arbitration on behalf of the Twist Entities. Additionally, six former

4

employees of the Twist Entities testified in person at the arbitration proceedings.  On

November 12, 2007, after reviewing the evidence and the parties' closing briefs, the

Arbitrator made an award in favor of the Arbusto Investors, totaling $5,758,299.00.

On November 20, 2007, the Arbusto Investors filed a petition with the Court to

confirm the arbitration award, contending that the Twist Entities had previously indicated

that they would refuse to satisfy it voluntarily.  On November 28, 2007, the Twist Entities

filed their own motion, requesting that the arbitration award be vacated.


## Legal Analysis

### I.      Standard of Review

The parties do not appear to dispute this court's power to enter a judgment on any

award resulting from the arbitration; however, the Twist Entities contend that the

arbitration award should nevertheless be vacated.  A court may vacate an arbitration

award only in very limited circumstances, lest arbitration "become little more than a

procedural detour, without ultimate significance."  Dean v. Sullivan, 118 F.3d 1170, 1171

(7th Cir. 1997).  Accordingly, "[u]nless there is a specific ground for vacating an award,

it must be confirmed."  IDS Life Ins. Co. v. Royal Alliance Assocs., Inc., 266 F.3d 645,

650 (7th Cir. 2001) (citations omitted).  The Federal Arbitration Act ("FAA") sets forth

the only grounds upon which courts may vacate arbitration awards:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy;

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  Thus, "the FAA imposes a 'heavy presumption' in favor of confirming arbitration awards."  ARCH Development Corp. v. Biomet, Inc., 2003 WL 21697742, at *3 (N.D. Ill. July 30, 2003) (citing Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1288 (11th Cir. 2002)).


## II.     Section 10(a)(3)

Here, the Twist Entities contend that the arbitration award should be vacated pursuant to 9 U.S.C. § 10(a)(3) due to the Arbitrator's alleged misconduct in failing to grant their third request for a continuance of the hearing.  A party seeking to vacate an arbitration award bears the burden of proof to demonstrate that the arbitrator was guilty of misconduct.  Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d. Cir. 1997).  Additionally, "[a] party seeking to vacate an award based on misconduct must prove that the misconduct affected the outcome of the hearing." Conseco Life Ins. Co. v. American Worldwide Ins., Inc., 2005 WL 1865516, at *3 (S.D. Ind. August 4, 2005) (Hamilton, J.) (citing Delta Mine Holding Co. v. AFC Coal Props.,

6

Inc., 280 F.3d 815, 822 (7th Cir. 2001)).  Assuming that "a reasonable basis exists for an arbitrator's decision not to grant a postponement, the court will be reluctant to vacate an award on the ground of arbitrator misconduct." Wilson v. Sterling Foster & Co., Inc., 1998 WL 749065, at *5 (N.D. Ill. October 15, 1998) (citing Naing Int'l Enters. v. Ellsworth Assocs., 961 F. Supp. 1, 3 (D.D.C. 1997)).  Thus, "except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d. Cir. 1997).

After conducting a thorough review of the factual record, we are convinced that there was a reasonable basis for the Arbitrator's decision to deny the Twist Entities' third request for a continuance, and further, that the Twist Entities were not unfairly prejudiced by Mr. Twist's absence at the hearing.  As mentioned above, the arbitration hearing was originally set to commence on July 23, 2007.  At the time the date was set, the Twist Entities made no objection, nor did Mr. Twist report that he had a conflict due to a scheduled surgery.  Not until a month after the original date was set did the Twist Entities request their first continuance based on Mr. Twist's scheduled surgery.  Therefore, we assume that, at the time Mr. Twist scheduled his surgery, he was well aware of the previously agreed-upon arbitration date.  After hearing argument on the matter, the Arbitrator did not grant the Twist Entities the ninety day continuance they had requested. However, in order to accommodate both parties' schedules, he moved the arbitration hearing up one week, to July 16, 2007, to enable Mr. Twist to attend and thus avoiding a lengthy delay based upon Ms. Janine-Page's trial conflicts.

7

Then, on May 29, 2007, due to Mr. Dillon's heart attack, the Twist Entities requested a second continuance, which the Arbitrator granted on June 7, 2007, albeit for a shorter time period than requested, setting September 17, 2007, as the new hearing date. Again, neither Mr. Twist nor counsel for the Twist Entities informed the Arbitrator of any conflict with that date before it was set.  In fact, on June 4, 2007, three days before the continuance was granted resulting in the hearing being set for September 17, 2007, the Twist Entities specifically informed the Arbitrator that Mr. Twist's surgery remained scheduled for July 20, 2007.  We view as more than curious the fact that not until one month after the continuance was granted did Mr. Twist's conflict arise.  We speculate that the late developing conflict arose either because Mr. Twist rescheduled his surgery at some point between June 4, 2007 (when the Twist Entities reported that Mr. Twist's surgery was still scheduled for July 20, 2007), and June 7, 2007 (when the Arbitrator set the new date for the hearing), though the Twist Entities failed to object to the chosen arbitration date or inform the Arbitrator of the conflict until July 6, 2007; or that Mr. Twist had knowledge that the continuance had been granted before rescheduling his surgery, at which point one of his doctors' main reasons for rescheduling – the stress of the arbitration immediately preceding the surgery – would no longer have been an issue.

Even if his doctors had still considered it necessary to reschedule the surgery after the continuance was granted, Mr. Twist had, at that point, full knowledge of the new date of the arbitration hearing and could have scheduled around it.  Although total hip replacement is obviously a serious surgery, neither Mr. Twist nor his doctors allege that

8

Mr. Twist was facing a life threatening condition that required immediate attention.  In fact, Mr. Twist's doctors had already postponed the surgery more than two months after its originally scheduled date in order to avoid the stress of the then-scheduled arbitration and, possibly more importantly, to give Mr. Twist time to lose weight and control his diabetes.  Mr. Twist would have been relieved of any stress associated with an upcoming legal proceeding and allowed additional time to lose weight and address his diabetes had he, knowing that the arbitration hearing had been rescheduled for September 17, 2007, simply rescheduled his surgery for a few weeks after that date.  Nothing in the record suggests that he could not have done so.  In light of these facts, we believe the Arbitrator acted reasonably in denying the Twist Entities' July 6, 2007, request for a continuance and therefore did not engage in misconduct, as defined by 9 U.S.C. § 10(a)(3).

Moreover, as mentioned above, even if the Arbitrator *had* engaged in misconduct, the Twist Entities would still be required to demonstrate that the Arbitrator's misconduct affected the outcome of the trial.  Beyond the general assertion that, as a party to the action, Mr. Twist would surely have material or relevant information to impart and would provide assistance to counsel in the conduct of the hearing and cross-examining opposing witnesses, the Twist Entities have failed to demonstrate that Mr. Twist's presence would have affected the outcome of the arbitration, or, stated otherwise, that his absence prejudiced their ability to present the Plaintiffs' case.

Not only was Mr. Twist represented by counsel, who was present and participated throughout the arbitration hearing, but the Vice President of both Cherokee and Twist

9

Energy, Mr. Thomas, also attended the proceedings.  Mr. Thomas was familiar with the day-to-day operations of Cherokee and Twist Energy and was directly and personally involved with the sale of the securities to the Arbusto Investors that were at issue in the arbitration.  <u>See</u> Exh. N (Arbitration Transcript).  Six former employees of Twist Entities testified during the hearing and were thoroughly cross-examined by Mr. Dillon.  The Arbitrator also admitted all of the Twist Entities' documentary evidence for review. Additionally, the Arbusto Investors contend (and the Twist Entities do not dispute) that the Twist Entities were collaterally estopped from relitigating certain issues that had been adjudicated in a prior proceeding and thus were estopped from asserting a defense; specifically, the Twist Entities were barred from asserting that the partnership securities at issue were exempt from registration.  In light of all the facts, there is no evidence that Mr. Twist's absence at the arbitration hearing affected the outcome.

## III.  Conclusion

For the foregoing reasons, we <u>DENY</u> Plaintiffs' Motion to Vacate Arbitration Award and <u>GRANT</u> Defendants' Motion to Confirm Arbitration Award.  Final judgment will be entered accordingly.

IT IS SO ORDERED.


Date:   08/22/2008

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

10

Copies to:

Lee Scott Archer
VALENTI HANLEY & ROBINSON, PLLC
larcher@vhrlaw.com

Bryan J. Dillon
FORE MILLER & SCHWARTZ
bjdatty@aol.com

Marisa  Janine-Page
PATRICIA A. MEYER & ASSOCIATES
mjaninepage@aol.com

Patricia A. Meyer
PATRICIA A. MEYER, APC
patmeyer@aol.com

William Henry Mooney
LYNCH COX GILMAN & MAHAN PSC
wmooney@lcgandm.com